NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RAFAEL ALEX MERCEDES,**<br><br>Petitioner,<br><br>v.<br><br>**UNITED STATES OF AMERICA,**<br><br>Respondent, | Civ. No. 14-4517 (WJM)<br>Crim No. 03-697 (WJM)<br><br>**OPINION** |

Petitioner Rafael Alex Mercedes, a prisoner confined at FCI Elkton, has filed this Petition pursuant to 28 U.S.C. § 2255 for a reduction of his 170-month sentence. Also currently pending before the Court is a motion to compel production of an affidavit from Petitioner's prior counsel. For the reasons set forth below, the 28 U.S.C. § 2255 Petition and the related motion to compel an affidavit from prior counsel are denied.

## I.   BACKGROUND

Mercedes is a repeat drug offender. He was previously convicted in New York on a felony drug offense and also served jail time in France for drug crimes. (*See* ECF No. 5 at ¶¶ 4-5). The instant matter arises out of a 2003 New Jersey indictment for trafficking cocaine.

In February 2003, the Government arrested Mercedes on a Complaint for drug trafficking. (*See id.* at ¶¶ 1-2). He was released on secured bond, but he did not appear in court pursuant to the terms of his release because he absconded to the Dominican Republic, allegedly to save his family in the United States from harm. In June 2003, the Court issued a warrant for his arrest.

On September 29, 2003, a federal grand jury issued a three-count indictment. The first two counts were for violations of 21 U.S.C. §§ 841 and 846 (drug trafficking offenses), and the third was for a violation of 18 U.S.C. § 3146 (failure to appear). (*Id.* at ¶ 3). Assistant U.S. Attorney Marion Percell was assigned to his case.

In 2006, Mercedes was still in the Dominican Republic. The United States was trying to extradite him without success. (*See* ECF No. 5-3). Mercedes then became the victim of an extortion plot perpetrated by the Chief of the Fugitive and Extraditable Unit at the National Directorate of Drug Control, Ramon de la Cruz Marte. According to a newspaper report that Mercedes submitted, Marte falsified a sentence issued by a Dominican Court so that Mercedes would appear extraditable. In the alleged plot, Marte and an accomplice told Mercedes that if he did not pay them five million pesos, he would be extradited to the United States. Mercedes reported the plot, and the Dominican authorities arrested Marte. Mercedes claims he subsequently faced threats and attempts on his life, so he fled to Europe. (ECF No. 8-1).

On December 29, 2010, seven and a half years after he absconded from the United States, Mercedes was arrested in Valencia, France, in the course of transporting approximately four kilograms of cocaine from Spain to Switzerland. He was convicted in France, and on May 14, 2011, a French court sentenced him to four years' imprisonment. (ECF No. 5 at ¶ 5).

The United States sought Mercedes's extradition from France. The extradition request was limited to the first two counts, the two drug counts, because the extradition treaty between France and the United States does not call for France to extradite defendants to the United States on charges for failure to appear. (*See id.* at ¶ 6). An extradition order was entered on July 22, 2011. (*Id.*). Initially, the actual transfer was stayed while Mercedes completed serving the sentence imposed in France. (*Id.*). Later, however, the French authorities agreed to a conditional release under the condition of extradition to the United States. (*Id.*). The French authorities turned Mercedes over to the U.S. Marshals Service on August 22, 2012. (*Id.*). In the United States, Mercedes was represented in the criminal proceedings by attorneys Brian J. Neary, David I. Goldstein, and John David Lynch.

Mercedes subsequently entered into a written plea agreement with the Government. (ECF No. 5-2). Pursuant to the plea agreement, Mercedes agreed to plead guilty to Counts 1 and 2 of the Indictment (drug trafficking), and if he did, the Government would ask the Court to drop Count 3 (failure to appear). The plea

2

agreement clearly explained that Mercedes was facing a mandatory minimum of ten years prison time and that the Court had discretion to sentence him to life imprisonment.

At sentencing, on July 30, 2013, the Court recognized that, depending upon the rulings concerning obstruction of justice and acceptance of responsibility (and consistent with the plea agreement), the total offense level could be 36, 34, or 32. (ECF No. 5 at ¶ 12). The Court ruled that an upward adjustment for obstruction of justice was appropriate given Mercedes's flight from justice in the United States. On the other hand, despite the fact that "[c]onduct resulting in an enhancement under USSG § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct," U.S.S.G. § 3E1.1, comment. (n.4), the Court concluded that petitioner was entitled to credit for acceptance of responsibility. The Court therefore found that the total offense level was 34. (ECF No. 5 at ¶ 14).

Furthermore, the Court agreed with the assessment of the U.S. Probation Office that the total of the criminal history points was five, placing petitioner Mercedes within criminal history category III. (*Id.* at ¶ 13). Based upon a total offense level of 34 and a criminal history category of III, petitioner Mercedes' guideline range would have been 188 to 235 months. (*Id.*). The Court varied downward, however, and sentenced petitioner Mercedes based upon criminal history category II. (*Id.*). Based upon a total offense level of 34 and a criminal history category of II, petitioner Mercedes's guideline range was 168 to 210 months. (*Id.* at ¶ 14). Judge Martini sentenced petitioner to 170 months' imprisonment. (*Id.* at ¶ 15).

Subsequently, Petitioner submitted the current timely motion to vacate, set side, or correct his sentence pursuant to 28 U.S.C. § 2255.

Mercedes is capable of understanding English, as evidenced by his use of an English interpreter during legal proceedings in France, (ECF No. 5-1), his declining to use a standby interpreter during his plea before this Court, his representation to this Court that he understands English, and his ability to speak to the Court at length in English during his sentencing.

## II.   PETITIONER'S ARGUMENTS

Construed liberally, the Petition complains that ineffective assistance of

3

counsel led to a sentence that was too long because counsel failed to raise the following issues at the time of sentencing or on appeal:

1.) Mercedes was not offered a fast-track disposition, nor was the lack of a fast-track disposition offer considered for the purposes of a downward departure.

2.) Mercedes should have received some time served for his time in French prison.

3.) Mercedes was the victim of a vindictive prosecution, motivated by his exposure of local and DEA corruption in the Dominican Republic.

4.) Mercedes claims he only agreed to a sentence of 120 months but received 170 months.

5.) The Court should not have considered Mercedes's flight to the Dominican Republic in sentencing him because the extradition was only based on the drug-trafficking charges.

Petitioner additionally alleges that that each of these factual theories of error were constitutional violations in their own right. He alleges that considering his absconding for the purposes of sentencing was also a violation of the doctrine of specialty, a principle of international law, as well as a violation of his constitutional rights.

## III. LEGAL STANDARD

### A. 28 U.S.C. § 2255

28 U.S.C. § 2255 provides that a prisoner in custody serving a sentence imposed by a federal court may move the court that imposed the sentence to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255. However, the statute does not afford a remedy for all errors that may have been made at trial or at sentencing. *Neely v. United States*, No. CIV.A. 09-5831, 2010 WL 2950616, at *2 (D.N.J. July 22, 2010) (*citing United States v. Addonizio*, 442 U.S. 178 (1979)). Errors warranting modification must raise "a fundamental defect which inherently results in a complete miscarriage of justice." *Id.* (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

A prisoner can challenge his or her sentence on the grounds that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *Hill v. United States*, 368 U.S. 424, 426-27 (1962) (*citing* 28 U.S.C. § 2255).

Section 2255 provides that a district court "shall . . . grant" an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. The Third Circuit has noted, "The discretion of the district court summarily to dismiss a motion brought under § 2255 is limited to cases where the motion, files, and records 'show conclusively that the movant is not entitled to relief.'" *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994) (*quoting United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992)).

In that Mercedes is not an attorney, the Court applies a liberal construction to his *pro se* arguments. *Haines v. Kerner*, 404 U.S. 519 (1972); *Mala v. Crown Bay Marina*, 704 F.3d 239 (3d Cir. 2013).

**B.      Ineffective Assistance of Counsel**

The Sixth Amendment to the United States Constitution guarantees that criminal defendants are entitled to the assistance of counsel in presenting their defense. The United States Supreme Court has recognized that "the right to counsel is the right to effective assistance of counsel." *McMann v Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970); *Wells v. Petsock*, 941 F.2d 253, 259 (3d Cir. 1991).

A defendant seeking to show that his counsel was constitutionally ineffective must meet a "highly demanding" standard. *Lockhart v. Fretwell*, 506 U.S. 364, 378 (1993). A petitioner's ineffective assistance claim is governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under the *Strickland* test, this Court should ask whether counsel's representation "fell below an objective standard of reasonableness." *Id.* at 687-88. This Court should then ask whether the defendant was prejudiced. To meet the prejudice prong, the petitioner must demonstrate that there exists a "reasonable probability that, but for counsel's unprofessional errors, the result of

5

> the proceeding would have been different." *Id.* at 694. Counsel renders deficient performance when he makes "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. When assessing claims of deficient performance, this Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. This Court should ask "whether counsel's assistance was reasonable considering all the circumstances." *Id.* To establish deficient performance, it is not enough for the petitioner to show that his attorney's strategy was merely wrong, or his actions unsuccessful; he must demonstrate that the actions his attorney took were "completely unreasonable." *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997).

*Nickens v. United States*, No. CIV. 09-4278 PGS, 2011 WL 4056287, at *4 (D.N.J. Sept. 12, 2011).

In this case, Plaintiff does not convincingly argue that there were any errors in his plea or sentencing. Thus, his arguments that he suffered from ineffective assistance of counsel or a "miscarriage of justice" are wholly without merit. Because the evidence demonstrates the meritlessness of his claims conclusively, he is not entitled to a hearing or relief pursuant to 28 U.S.C. § 2255.

## IV. ANALYSIS

### A. Fast-Track Disposition

Mercedes argues that the Court committed a Constitutional violation when it did not take into consideration the fact that the Government did not offer Mercedes a fast-track disposition. The argument is meritless. Fast-track disposition in the District of New Jersey is only available for defendants charged with felony re-entry in violation of 8 U.S.C. § 1326. (Memorandum of James M. Cole, Deputy Attorney General, ECF No. 12-1, 12-2).

There is no dispute that Mercedes was not charged with criminal re-entry. He was never eligible for a fast-track disposition. Therefore, he has no rights related to this sentencing procedure.

**B.     Credit for Time Served in France**

Counsel did raise the issue of giving Mercedes credit for time served in France. The following colloquy occurred at the sentencing:

> **MR. NEARY:** Judge, is he entitled to any credits for the time he spent while awaiting extradition? I understand he gets credit for being here in the United States once he gets here.
>
> **THE COURT:** You know, that's something I think the Bureau of Prisons would determine better than I would at this point because I don't know how long he was in . . . France.
>
> **MR. NEARY:** He was in France awaiting the extradition.
>
> **THE COURT:** Ms. Percell, unless you know something about that, I'm going to leave that up to the Bureau of Prisons to compute how much credit, if any, he should be getting.
>
> **MS. PERCELL:** I think that's right, your Honor. . . .
>
> **THE COURT:** . . . I'm not in a position to make the determination, Mr. Neary. I think that's something you would have to take up with the Bureau of Prisons and/or the Government if you have authority that says he's entitled to that. He was in France serving a sentence when this extradition process took place, and I don't know the details of what occurred there. So that's something you would have to make a determination on.
>
> **MR. NEARY:** I'll deal with the Bureau of Prisons and may have to seek the Court's relief, but we'll abide that.

The Court's statements in the colloquy were correct. Because time-served credit is a challenge to the sentence's execution, as opposed to a challenge to the sentence's validity, he must first exhaust administrative remedies with the Bureau of Prisons, and only then may he file a habeas corpus petition pursuant to 28 U.S.C. § 2241. "Section 2241 is the only statute that confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence." *United States v. Eakman*, 378 F.3d 294, 297 (3d Cir. 2004) (*citing Coady v. Vaughn*, 251 F.3d 480, 485 (3d Cir. 2001)). The statute relied upon by petitioner Mercedes, Section 2255, in contrast, "is expressly limited to challenges to the validity of the petitioner's sentence." *Eakman*, 378 F.3d at 297

(*citing Coady*, 251 F.3d at 485). Petitioner's argument that the Bureau of Prisons should have granted him credit for the time he spent in a French jail awaiting extradition is a challenge to the execution of the sentence, and it accordingly must be brought under Section 2241. *E.g., Hughes v. Slade*, 347 F. Supp. 2d 821, 824 n.3 (C.D. Cal. 2004) ("It is well established that a § 2241 petition is the appropriate vehicle to challenge the correctness of a jail-time credit determination."); *Chityal v. Marberry*, 2009 WL 3241852, at *2 (W.D. Pa. 2009) (cited by petitioner; see Petitioner's Memorandum at 9).

Before filing the Section 2241 petition, Mercedes must first exhaust his administrative remedies with the Bureau of Prisons. *Armstrong v. Grondolsky*, 341 Fed. App'x 828, 831 (3d Cir. 2009); *Hughes v. Slade*, 347 F. Supp. 2d at 824 n.3. Even if he had done this, however, this Court would not have jurisdiction to hear the Section 2241 petition because a Section 2241 petition must be brought in the district where the petitioner is incarcerated. *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004). The petitioner is incarcerated at FCI Elkton, which is in the Northern District of Ohio, not the District of New Jersey.

### C. Vindictive Prosecution

Mercedes's argument that the prosecution was a vindictive effort to retaliate against his exposing corruption in the Dominican Republic has no merit. The indictment in this case issued on September 29, 2003. Mercedes offered newspaper clippings proving that he did not expose the corruption in the Dominican Republic until 2006. (ECF Nos. 8-1, 8-2). It is impossible that Mercedes's exposure of corruption in the Dominican Republic in 2006 caused the issuance of an Indictment in 2003.

### D. Length of Sentence Agreed Upon

The evidence clearly contradicts Mercedes's argument that he expected his sentence to be only 120 months. The Plea Agreement, which Mercedes signed, is explicitly clear that Mercedes was facing a *minimal* sentence of 120 months, that the sentence could be significantly longer, and that the ultimate sentence was entirely up to the discretion of the Court. The relevant excerpts from the Plea Agreement state:

> The violation of 21 U.S.C. § 846 to which Rafael Alex Mercedes agrees to plead guilty carries a statutory mandatory minimum sentence of 10 years [and] a statutory maximum prison sentence of

> life. . . . . The violation of 21 U.S.C. § 841(a)(1) to which Rafael Alex Mercedes agrees to plead guilty also carries a statutory mandatory minimum sentence of 10 years [and] a statutory maximum prison sentence of life. . . . The sentence on each count may run consecutively.
>
> . . .
>
> The sentence to be imposed upon Rafael Alex Mercedes is within the sole discretion of the sentencing judge, subject to the provisions of the Sentencing Reform Act, 18 U.S.C. §§ 3551-3742, and the sentencing judge's consideration of the United States Sentencing Guidelines. The United States Sentencing Guidelines are advisory, not mandatory. The sentencing judge may impose any reasonable sentence up to and including the statutory maximum term of imprisonment and the maximum statutory fine. This Office cannot and does not make any representation or promise as to what guideline range may be found by the sentencing judge, or as to what sentence Rafael Alex Mercedes ultimately will receive.
>
> . . .
>
> [T]his Office reserves its right to take any position with respect to the appropriate sentence to be imposed on Rafael Alex Mercedes by the sentencing judge, to correct any misstatements relating to the sentencing proceedings, and to provide the sentencing judge and the United States Probation Office all law and information relevant to sentencing, favorable or otherwise. In addition, this Office may inform the sentencing judge and the United States Probation Office of: (1) this agreement; and (2) the full nature and extent of Rafael Alex Mercedes's activities and relevant conduct with respect to this case.

At the time of the plea, Mercedes verbally indicated to the Court that he understood his sentence was going to be *at least* 120 months. The relevant colloquy is as follows:

> **COURT:** [Y]ou understand and speak English. Correct?
>
> **MERCEDES:** Yes, correct.
>
> **COURT:** Now, if I accept your plea to those counts you'd be facing

9

the following penalty: As to each count, it carries the penalty of a statutory mandatory minimum principal sentence of 10 years, and a statutory maximum principal sentence of life. Do you understand that?

**MERCEDES**: Yes, your Honor.

**COURT**: You should also understand that there's not what's called parole in the federal system, which means if you were to receive a custodial term as a sentence, you'll actually serve in a facility, in custody 85 to 90 percent of that custodial term. Do you understand that?

**MERCEDES**: Yes.

**COURT**: Now, have you discussed all of this with your lawyers before today?

**MERCEDES**: Yes, your Honor.

**COURT**: I see that you're also entering this plea pursuant to a plea agreement dated February 19th, 2013. Is that your signature on that agreement on page 6?

**MERCEDES**: Yes.

**COURT**: Did you sign it on February 27th, 2013 after you read it closely discussed it with your lawyers and they answered any questions you may have had about the information in this document?

**MERCEDES**: Yes, your Honor [...]

**COURT**: Did you sign it voluntarily without anybody forcing, threatening or coercing you to do that?

**MERCEDES**: Yes, your Honor.

**COURT**: All right. Now, it's all very important but I'm just going to highlight a few things, first and foremost, you should understand this is the full and complete agreement between you and the Government,

and what that means is if somebody, your lawyers or anyone, were to have promised you or told you something that's not in this agreement, whatever that was, is of no binding effect on the Government or you. Do you understand that?

**MERCEDES:** Yes I understand that.

**COURT:** You should also understand when it comes to the sentence to be imposed in this case, the sentence is up to the Judge, myself. And while there are what's called Sentencing Guidelines that I look to for guidance, the guidelines are not mandatory, they're advisory. And what that means is, I could, if I thought it was a reasonable sentence, impose a sentence up to a life in prison. Do you understand that?

**MERCEDES:** Yes, your Honor.

It being abundantly clear that Mercedes understood that his sentence would be anywhere from 10 years to life, his argument that he believed his sentence was only going to be 120 months is completely baseless and bespeaks no ineffectiveness of counsel nor constitutional violation.

### E. Consideration of Petitioner's Absconding in Sentencing

When France extradited Mercedes to the United States, it was only pursuant to the drug charges, not the failure to appear charges, because the extradition treaty between France and the United States does not require France to extradite for failure to appear. Mercedes argues that the doctrine of specialty was violated because the Court considered Mercedes's flight as an obstruction of justice when it sentenced Mercedes.

The doctrine of specialty is a principle of international law that an extradited defendant "may be tried only for the offense for which he was delivered up by the asylum country." *United States v. Lomeli*, 596 F.3d 496, 500 (8th Cir. 2010). "The doctrine is now commonly included in many U.S. extradition treaties." *Id.*

The doctrine of specialty was not violated because Mercedes never faced trial for Count 3 of the Indictment. He pled guilty to Counts 1 and 2, and the Court dismissed Count 3 upon the Government's motion.

11

The dropping of Count 3, however, did not mean the Court was barred from considering the underlying conduct of flight for the purposes of sentencing. *See United States v. Baird*, 109 F.3d 856, 863 (3d Cir.), *cert. denied*, 522 U.S. 898 (1997)) ("conduct not formally charged . . . can be considered at sentencing"). Nor is the doctrine of specialty violated when a court considers uncharged criminal conduct in increasing an extradited defendant's sentence. *See United States v. Mangarella*, 489 F. App'x 648, 653 (4th Cir. 2012); *United States v. Lomeli*, 596 F.3d 496, 501 (8th Cir. 2010); *United States v. Garrido–Santana*, 360 F.3d 565, 578 (6th Cir. 2004); *United States v. Lazarevich*, 147 F.3d 1061, 1063-65 (9th Cir. 1998). *See also United States v. Alvarez-Moreno*, 874 F.2d 1402, 1413-14 (11th Cir. 1989) (noting that the doctrine of specialty does not restrict admissibility of evidence at trial). Therefore, Mercedes's counsel made no error when he failed to appeal on these grounds, and there is no underlying ineffective assistance of counsel, violation of international law, nor violation of other laws or rights.

## V.   CONCLUSION

Since it is abundantly clear that there was no ineffective assistance of counsel based upon all documents and allegations before the Court, Mercedes's motion to compel his counsel to supply an affidavit is denied. For the reasons stated in this Opinion, Petitioner's motion for relief under Section 2255 is denied. Since the evidence is conclusive, denial is without an evidentiary hearing. Mercedes has not made a substantial showing of the denial of a constitutional right. Therefore, no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c)(1)(B). *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2. An appropriate Order follows.

WILLIAM J. MARTINI, U.S.D.J

March __11__, 2015